29 C.C.P.A. (Patents)

## In re PADDOCK et al.

### Patent Appeals No. 4534.

Court of Customs and Patent Appeals.
Dec. 1, 1941.

R. G. Story, of Beacon, N. Y., for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of a claim numbered 3 embraced in appellants' joint application for patent relating to a method for canning meat "such as ham, spiced ham, luncheon meat, loin pork, and the like." The specification states, in substance, that one of the objects of the invention is to improve the keeping qualities of the canned meat products and another to provide a method of sterilizing them.

One claim stands allowed. The rejected claim reads as follows: "3. The method of treating canned meat which comprises heating the canned meat to a temperature between 60 degrees C. and 100 degrees C., cooling the canned meat, and subsequently heating the canned meat to a temperature between 60 degrees C. and 100 degrees C."

The following statement from the brief of the Solicitor for the Patent Office seems fairly to epitomize in a general way the teaching of appellants' application: "It has been found that canned meat when sterilized in the can by subjecting it to a temperature of 100° C., usually by application of boiling water, is not completely sterilized. While the application of heat at this temperature destroys the bacteria present in the meat, it does not destroy spores which may later develop into bacteria. After a single application of heat, the contents of the can gradually cool and in doing so attain a temperature favorable to the incubation of bacteria from the spores. The bacteria thus produced, however, can be killed by a second application of heat. Any spores which at that time may not have developed into bacteria would survive the second heating but upon a third or fourth application of heat all of the spores will have developed into bacteria and will be killed. Appellants state in their application * * * that in some cases four heat treatments are necessary."

The allowed claim defines the period during which the canned meat is first heated, the degree of temperature to which it is then cooled, the period of time during which it is maintained at the temperature to which so cooled, and the period during which it is heated the second or subsequent time. It will be observed that none of these limitations as to time are embraced in the rejected claim which was regarded by the tribunals of the Patent Office as being unpatentable over prior art, as illustrated in a patent and certain publications cited as follows: Duckwall, 1,114,-972, October 27, 1914; Commercial Fruit and Vegetable Products, by Cruess, p. 18, pub. by McGraw-Hill Book Co., New York, 1924; Canning and Preserving with Bacteriological Technique, by Duckwall, pp. 222–224, pub. by Pittsburgh Printing Co., Pittsburgh, 1905.

The board discussed the claim and the prior art, applying the references as follows:

"The temperatures employed are only those which are obviously desirable. They are not patentably different from those disclosed in the prior art. The principal question presented by the appeal is whether or not invention is present in the application of the intermittent method of sterilization to canned meats.

"The Duckwall publication describes its use on all kinds of infusions of meats and vegetables, and mentions also several vegetables by name. The Duckwall patent applies it to solid or semi-solid foods and mentions certain vegetables specifically. Both of these references disclose intermittent sterilization of canned foods.

"The Cruess publication discloses intermittent sterilization at 100°C. It states this method is much safer than the one-heating method at 100°C. for vegetables of low acidity, and that the latter method is unsafe for meats and vegetables because of danger of survival of spores. We are satisfied invention would not be involved in using the intermittent method of Cruess for sterilizing canned meat, and also that the claims are not allowable over either of the Duckwall references, and particularly so in view of the Cruess disclosure as to the sterilization of meat."

The discussion of the references by the examiner was more detailed than that of the board, and the brief before us on behalf of appellants enters into a still more elaborate analysis of them.

It is contended by appellants that the patent to Duckwall relates to vegetables, and it is true that no meats are specifically named therein. Certain vegetables are named, but neither the specification nor the claims appear necessarily to be limited to vegetables. In both, reference is made to "solid or semi-solid foods." The claims themselves do not contain the word "vegetables," nor do we find any particular vegetable designated eo nomine therein. That the patent teaches intermittent sterilization (that is a second heating, or subsequent heatings, when necessary to attain complete sterilization) seems to be conceded.

The examiner regarded the patent as an elaboration and commercial application of the process described in the Duckwall publication which describes experiments carried out by a Professor Tyndall. The following pertinent matter relating to "Discontinuous Sterilization" is quoted from that publication in the brief of the Solicitor for the Patent Office:

"* * * Moist heat, usually 212°F., is applied to the material in water bath, for a time ranging from twenty minutes to one hour, after which it is placed in a cool place for one day, and the same process is then applied a second time, and this is continued for three days, so that the material receives four processes, which render it sterile.

"The scientific principle is based on the time required for spores to vegetate. As we have stated in previous pages, the vegetating cells are easily destroyed; very few, indeed, are able to withstand 180°F., and almost all perish at 165°F. Now the spores, being very resistant to heat, are simply softened during the first one or two processes, and readily perish when they begin to vegetate. Probably most of them are destroyed in two heatings, but a few of the drier forms may require a day or two longer to swell up and vegetate, so that the four heatings will as a rule destroy all."

It may be said at this point that appellants here contend that Duckwall used temperatures of 100°C. (212°F.), or above, whereas appellants use temperatures below 100°C., and that they "have found a temperature range of between 60°C. to 100°C., i. e. above 60°C. and below 100°C., to be critical."

With respect to this, the brief of the Solicitor for the Patent Office states: "It will be obvious from a comparison of this [the Duckwall publication] disclosure with what is set forth in claim 3 that the methods are the same and that even the temperatures employed correspond closely. In rejected claim 3 the temperature of heating is specified as being between 60°C. and 100°C. and in the publication the temperatures which are stated to be sufficient to destroy the bacteria are 165°F. or 180°F., which are, respectively, equivalent to 74°C. and 82°C. These temperatures are in about the middle of the range 60°C.-100°C. specified in the rejected claim."

It is also pointed out in the brief of the Solicitor for the Patent Office that the temperature disclosure in the patent for the second heating is 180°F., or 82°C., and that the theory set forth in the Duckwall patent is the same as that given in appellants' application as the basis for the method.

The Cruess publication which teaches "intermittent sterilization" is headed "Commercial Fruit and Vegetable Products," and much of it refers to such products. However, in different paragraphs the term "meats" is used. One paragraph reads: "As a general rule, the one-period sterilization of meats and vegetables at 100°C. (212°F.) is unsafe because of danger of survival of spores of Bacillus botulinus."

Immediately following the above is a paragraph which reads: "Intermittent Sterilization at 100°C.—The action of heat is rendered more effective if the time of sterilization is divided into three periods, three sterilizations of 1 hour each at 100°C. being much more effective than a single sterilization at 100°C. The sterilizations are generally separated by periods of 24 hours. This method is much safer than the one-heating method at 100°C. for vegetables of low acidity."

Upon the basis of the last paragraph, appellants' brief argues, in substance, that there is no teaching by the Cruess publication that "intermittent sterilization" would be applicable to anything "other than vegetables of low acidity," and the position is taken that "the publication of Cruess adds nothing over the Duckwall publication and is merely cumulative."

It seems obvious to us that appellants' contention as to the patentability of the rejected claim is based upon the theory that invention was involved in the application to canned meat products of a process applied in the prior art to the sterilization and

preservation of canned vegetable products, and that they would have us disregard the allusions to meat products contained in the references.

Passing, without determining, the question of whether it would involve invention to apply to meats a process applied solely to vegetables, were there a distinct issue as to such question, we must hold that the prior art as illustrated in the references embraces matter relating to meats which precludes a holding that invention is described in the broad rejected claim.

We have considered the affidavit of appellants filed below during the prosecution of the application, but find nothing therein which would justify a conclusion different from that reached by the tribunals of the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.